# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TOP SURE INVESTMENTS, INC.,

Plaintiff,

v.

CLEARVIEW SETTLEMENT

SOLUTIONS, LLC, and HOLLY

EDELSTEIN, *et al*.,

Defendants.

Civil Action No. 15-48 (ABJ-AK)

## MEMORANDUM OPINION

On June 15, 2015, Holly Edelestein and Clearview Settlement Solutions, LLC

("Clearview LLC") (collectively, the "Clearview Defendants") filed a Motion to Delay Entry of

Default Judgment Damages ("Motion") [29] against defaulting defendants Marck Properties,

LLP ("Marck Properties"), Robert A. Moore, LLC ("Moore LLC"), and William L. Jones, LLC

("Jones LLC").[1]  Plaintiff Top Sure Investments, Inc. ("Plaintiff" or "Top Sure") has filed a

Memorandum in Opposition to the Motion ("Opposition") [31]. This matter was referred to the

undersigned on June 25, 2015 for a Memorandum Opinion pursuant to LCvR 72.2(a), and a

hearing on the Motion was held on July 7, 2015.[2]  For the reasons set forth herein, the Motion

---

[1] Entry of default was premature as to Jones LLC. On May 23, 2015, Plaintiff filed a Motion to Substitute Service for Defendant William Jones' Evasion of Service ("Motion to Substitute Service") [23], providing evidence that Defendant William L. Jones ("Defendant Jones"), authorized managing member of Jones LLC, acted to evade service. On June 8, 2015, in light of the evidence supplied by Plaintiff, Judge Amy Berman Jackson granted Plaintiff's Motion to Substitute Service, allowing Plaintiff to serve Defendant Jones by mail. Defendant Jones was served by certified mail on June 10, 2015. (Return of Service/Affidavit of Summons and Complaint Executed [27] at 1.) Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), Defendant Jones' Answer was due on July 1, 2015. As of the date of this Memorandum Opinion, Defendant Jones has failed to respond on behalf of himself or Jones LLC.

[2] Pursuant to LCvR 72.2(b), "any party may file written objections to a magistrate judge's ruling under paragraph (a) within 14 days after being served with the Order of the magistrate judge, unless a different time is prescribed by the magistrate judge or the district judge. The objections shall specifically designate the Order or part thereof to

will be denied.

# I. Background

This case arises out of a real estate transaction gone awry. Plaintiff and several of the defendants attempted to purchase, remodel, and then resell a distressed house (the "Property") located at 4922 7th Street, N.W., Washington, D.C., 20011. (Amended Complaint ("Am. Compl.") [6] ¶ 1.) On February 11, 2015, after engaging in unsuccessful attempts to recover its investment in the Property, Plaintiff filed suit against seven Defendants: Marck Properties, Jones LLC, Moore LLC, Clearview LLC, Holly Edelestein, Defendant Jones and Robert A. Moore ("Defendant Moore"). *See* Amended Complaint. To date, only the Clearview Defendants have filed an Answer ("Answer") [21] with the Court.

Plaintiff is a real estate investment corporation formed under Nevada law, with a principal place of business in Virginia. (Am. Compl. ¶ 1.) Marck Properties, Jones LLC, and Moore LLC are entities that flip houses in the District of Columbia metropolitan area. (Am. Compl. ¶¶ 3-4, 6.) Defendants Moore and Jones are the authorized managing members of their respective LLCs and "member partner[s]" of Marck Properties. (Am. Compl. ¶¶ 5, 7.) Defendant Moore personally solicited and received a gap-funding loan from Plaintiff in the amount of $93,592.15, which Defendant Jones used to purchase the Property. (Am. Compl. ¶ 5, 7.) Clearview LLC is a settlement company in the District of Columbia metropolitan area that conducted a settlement for the purchase of the Property and allegedly received "gap-funding monies from Plaintiff, per its instructions to complete the purchase of the Property by Marck Properties."[3]  (Am. Compl. ¶ 8.) Defendant Holly Edelestein was the managing member of

---

which objection is made, and the basis for the objection."

[3]  The Amended Complaint is ambiguous as to whom "its" refers. This ambiguity is also noted in the Clearview

Clearview LLC who personally conducted the settlement for the purchase of the Property. (Am. Compl. ¶ 9.) She also provided direction and instruction to Plaintiff regarding wiring the gap-funding monies to complete the purchase of the Property by Marck Properties.[4]  (Am. Compl. ¶ 9.)

As collateral for the funds it contributed to complete the purchase of the Property, Plaintiff required a Joint Venture Agreement, a promissory note,[5] and a second Deed of Trust to be completed and given to the Plaintiff.[6]  (Am. Compl. ¶¶ 15-19.) Plaintiff was aware of a previous loan commitment by Hard Money Lenders, LLC ("Hard Money").[7]  (Am. Compl. ¶ 16.) Plaintiff claims that before wiring the $93,592.15 necessary to complete the sale of the Property, it "asked the Clearview Defendants to assure that the Joint Venture Agreement, requiring a Deed of Trust, was signed with the correct numbers, and to provide a record of the

---

Defendants' Answer. (Answer ¶ 8.)

[4]  This paragraph of the Amended Complaint is ambiguous as to who was supposed to wire the $93,592.15. Plaintiff's pleadings and supporting documents conflict with one another on this point. Plaintiff states that on August 6, 2013, "following the [Clearview Defendants'] wiring instructions, [Plaintiff] transferred $93,592.15 to [Marck Properties, Jones LLC, and Moore LLC]." (Affidavit in Support of Default ("Affidavit") [18] ¶ 9.) In direct conflict with this statement, Plaintiff pled in its Amended Complaint that the Clearview Defendants "received the gap-funding monies from Plaintiff." (Am. Compl. ¶ 8). Plaintiff further contends that the Clearview Defendants "accepted transfer of Plaintiff's gap-funding loan wired to [the Clearview Defendants'] escrow account" (Am. Compl. ¶ 69.) Plaintiff also asserts a Breach of Contract claim against the Clearview Defendants because of their alleged failure to "get a properly executed Deed of Trust securing the gap-funding loan prior to disbursing Plaintiff's gap-funding loan," thereby indicating that the Clearview Defendants ultimately transferred the money to Marck Properties, Jones LLC, and Moore LLC. (Am. Comp. ¶ 70).

[5]  In August 2013, Plaintiff entered into a Joint Venture Agreement with Marck Properties, Jones LLC, and Moore LLC for Plaintiff to provide them with funding for the purchase, rehabilitation, and resale of the Property. (Affidavit ¶ 7.) On August 6, 2013, the initial settlement date of the Property's sale, Marck Properties, through Moore LLC, executed a promissory note for $93,592.15, which had a balloon date of August 1, 2014 and charged an annual rate of interest of 10% on any unpaid balance under the promissory note. (Id.)

[6]  Plaintiff's Amended Complaint is unclear as to who was responsible for completing and giving these documents to Plaintiff. See Am. Compl. ¶ 17. Plaintiff contends that the Joint Venture Agreement provided that "at the time Plaintiff made its contribution of equity funds, Marck Properties was to deliver a Deed of Trust covering the Property, which was subordinate to the senior lien and concurrent with Plaintiff's deposit of the equity funds," but does not specify to whom Marck Properties was supposed to deliver the Deed of Trust. Plaintiff asserts in Counts Five and Six that the Clearview Defendants were responsible for providing Plaintiff with a properly executed Deed of Trust. (Am. Compl. ¶¶ 18, 67-76.) See Exh. 2, ¶ 5.

[7]  Hard Money is a third party with a senior lien on the Property. (Am. Compl. ¶ 16.) Hard Money is not a party to this lawsuit.

wire once completed."[8]  (Am. Compl. ¶ 21.) Plaintiff wired the money but the Clearview Defendants failed to supply Plaintiff with the documents. (*Id*.) On August 6, 2013, Marck Properties executed a promissory note for $93,592.15 "that required that it be secured by a Deed of Trust." (Am. Compl. ¶ 22.)

On August 7, 2013, Plaintiff gave Defendant Jones an advance construction draw of $15,000 for the purpose of rehabilitating the Property. (Am. Compl. ¶ 26.) Plaintiff's Amended Complaint states that the rehabilitation continued throughout the fall and winter of 2013. (Am. Compl. ¶ 27.) Without providing any additional context, the Amended Complaint adds that "after nothing happen[ed] regarding resale of the Property at the beginning of the new 2014-year, [Plaintiff] grew concerned that the Property was not reasonably priced." (*Id*.) In January 2014, Plaintiff consulted with a realtor familiar with the area and discovered that the "offered price for the Property was at least 7%-10% more than asking prices for comparable properties in the neighborhood where the Property was located." (Am. Compl. ¶¶ 28-29.)

Plaintiff communicated its concerns to Defendant Moore, and "after several months of inaction, [Plaintiff] began fearing the worst." (Am. Compl. ¶¶ 29-30.) Plaintiff communicated with Marck Properties on May 9, 2014 regarding "the amount of money [Plaintiff] committed to the Property and its expected return." (Am. Compl. ¶ 30.) In July 2014, Plaintiff spoke with Hard Money regarding the possibility of the foreclosure of the senior lien.[9]  (Am. Compl. ¶ 31.) Plaintiff alleges that it then contacted the Clearview Defendants to confirm that they were in

---

[8]  *See supra* note 4.
[9]  Plaintiff provides no further information regarding the potential foreclosure or when and how Plaintiff learned of it.

4

possession of Plaintiff's original Top Sure Deed of Trust, as Plaintiff claims that it never received the "original document or any other properly executed Deed of Trust." (Am. Compl. ¶ 31.) The Clearview Defendants told Plaintiff that the only original Deed of Trust was returned to Hard Money. (Am. Compl. ¶ 32.) On August 4, 2014, the Clearview Defendants allegedly sent a mobile notary to Defendant Moore to execute a proper original Deed of Trust by Marck Properties, but Moore refused. (Am. Compl. ¶¶ 33-34.) Jones and Moore also refused to repay Plaintiff for the gap-funding loan and advanced construction draw, despite repeated requests. (*Id.*)

Accordingly, Plaintiff filed its Amended Complaint on February 11, 2015, alleging six counts.[10]  The first four counts, Breach of Contract, Unjust Enrichment, Conversion, and Negligence – Breach of Fiduciary Duty, were asserted against the Defaulting Defendants (Marck Properties, Moore LLC, and Jones LLC), as well as Defendant Jones and Defendant Moore. These counts arise out of an alleged failure to repay the gap-funding loan that Plaintiff issued to Marck Properties on August 6, 2013 in the amount of $93,592.15 upon execution of a promissory note, as well as an alleged failure to repay the $15,000 advanced construction draw Plaintiff paid to Jones LLC as part of their joint venture to buy and flip the Property. (Am. Compl. ¶¶ 1, 3-22.) *See also* Motion for Entry of Default Judgment ("Motion for Default") [22] at 1-2.); Affidavit ¶ 9. Counts Five and Six, Negligence – Breach of Fiduciary Duty and Breach of Contract, were asserted against the Clearview Defendants for their alleged failure to properly

---

[10]  Plaintiff amended its Complaint in order to permit Defendants to sell the Property to a third-party to avoid a scheduled foreclosure sale of the Property by a senior lender. (Motion for Default Judgment [22] at 2.) On February 13, 2015, two days after Plaintiff filed its Amended Complaint, under threat of foreclosure by a senior lienholder, Marck Properties sold the Property to a third party purchaser. (Affidavit ¶ 12.) Plaintiff states that "on or about February 18, 2015, Plaintiff received $1,713.84, which were the remaining proceeds from February 13, 2015 sale of the Property by Marck Properties." (Affidavit ¶ 12.)

document and record a second Deed of Trust for the Property before disbursing the gap-funding loan.[11]  (Am. Compl. ¶ 23-25.)

Ultimately, Plaintiff asserts that the Defaulting Defendants' refusal to cure the Deed of Trust issues was a deliberate attempt to "cut Plaintiff out of the deal," by preventing Plaintiff from "seeking payment for the gap-funding loan from a foreclosure sale of the Property." (Am. Compl. ¶ 37.) Plaintiff contends that the Clearview Defendants alleged failure to obtain and record a properly executed Deed of Trust for the Property constitutes a breach of the standard of care in the real estate industry and a breach of the Clearview Defendants' fiduciary duty to Plaintiff. Plaintiff further asserts that, as a result of the Clearview Defendants' breach, Plaintiff was prevented from securing its second lien position and thereby protecting its investment. (Am. Compl. ¶ 38.)

The Clearview Defendants timely answered the Amended Complaint on May 20, 2015. Defendant Moore did not answer the Amended Complaint but instead filed a Suggestion of Bankruptcy [11] with the Court on April 27, 2015.[12]  He failed to file an Answer on behalf of Moore LLC. Marck Properties and Jones LLC failed to answer the Amended Complaint, and Defendant Jones actively evaded service of process. (Motion to Substitute Service at 3-5.) On May 21, 2015, Plaintiff filed its Motion for Default as to the Defaulting Defendants (Marck Properties, Moore LLC, and Jones LLC).[13]

---

[11] *See supra* note 4.
[12] Defendant Moore filed for bankruptcy on December 31, 2014 in the U.S. Bankruptcy Court for the District of Maryland. (14-29712).
[13] Default was entered improperly early as to Defendant Jones. *See supra* note 1.

On June 8, 2015, Judge Jackson referred Plaintiff's Motion for Default to the undersigned pursuant to LCvR 72.3(a). On June 15, 2015, however, the Clearview Defendants filed their Motion to Delay Entry of Default Judgment Damages against the Defaulting Defendants, in which they asked the Court to "defer the entry of a judgment as to damages against the defaulted parties." (Motion at 2.) The undersigned held a hearing on the Motion on July 7, 2015, during which the Clearview Defendants reiterated their concern that entry of a default judgment as to damages against the three Defaulting Defendants would "would have the effect of setting the damages against the Clearview Defendants . . . with regard to the $93,592.15 loan." (Motion at 3.) The Clearview Defendants "object[ed] to any interpretation of the defaults as in any way creating binding admissions of Plaintiff's allegations" and moved to delay entry of default damages until after the close of discovery. (Motion at 2-5.)

## II. <u>Legal Standard for Delay of Default Judgment</u>

An entry of default is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Where the plaintiff's claim is not for a sum certain, the party must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). The determination of whether default judgment is appropriate is committed to the discretion of the trial court. *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

When multiple defendants are involved, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express

determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. P. 54(b). *Frow v. De La Vega*, the leading Supreme Court case on the permissibility of issuing a default judgment against defaulting defendants prior to the resolution of the case against the answering defendants, establishes that "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2690 (3d ed. 2001). *See generally Frow v. De La Vega*, 82 U.S. 552 (15 Wall.), 21 L.Ed. 60 (1872).

While "*Frow* undoubtedly stands for the proposition that in certain circumstances it is inappropriate to enter a default judgment against one defendant when other defendants in the same case have prevailed," *Farzetta v. Turner and Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986), subsequent courts have developed differing understandings of precisely what those circumstances are. This Circuit has held that *Frow* bars entry of a default judgment against one of several defendants only if the theory of recovery is one of true joint liability.[14]  *See Whelan v.*

---

[14]  Different circuits have articulated two different interpretations of *Frow*. In addition to the D.C. Circuit, the Second, Third, Seventh, and Eighth Circuits have adopted a narrow approach to *Frow*, generally requiring true joint liability between the defaulting and answering defendants. *See McMillian/McMillian, Inc. v. Monticello Ins. Co.*, 116 F.3d 319 (8th Cir. 1997) (*Frow* not extended to situations where the co-defendants shared closely related interests but were not truly jointly liable); *Farzetta v. Turner and Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) (allowing entry of default judgment against two defaulting asbestos suppliers, even though the jury found that the employee had assumed risk vis-a-vis the answering asbestos supplier, where there was no finding by the jury that the defaulting defendants supplied asbestos simultaneously with the answering defendants); *In Re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257 (7th Cir. 1980) (holding that *Frow* is not applicable where different results as to different parties are not logically inconsistent); *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 n.4 (2d Cir. 1976) ("at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others"). The Fourth, Fifth, Ninth, Tenth, and Eleventh Circuits view *Frow* relatively broadly, generally holding that *Frow* governs where the answering and defaulting defendants are closely interrelated or otherwise similarly situated. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (citations omitted) (internal quotation marks omitted) (holding that it would be "incongruous and unfair to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants"); *In re First T.D. & Investment, Inc.*, 253 F.3d 520, 532 (9th Cir. 2001)

*Abell,* 953 F.2d 663, 674-75 (D.C. Cir. 1992) ("in cases involving multiple defendants, a default order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint . . . and when the relief sought can only be effective if judgment is granted against all.") *See also Carter v. District of Columbia*, 795 F.2d 116, 137 (D.C. Cir. 1986) (holding that "*Frow* stands for the narrow rule that a default judgment may not be entered against one of several defendants where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable.") Therefore, in this Circuit, a default judgment cannot go forward in cases in which the liability of one defendant necessarily depends upon the liability of others. Absent such true joint liability, a default judgment may go forward as to the defaulting defendants while the case proceeds on the merits as to the answering defendants.

## III. Analysis of Clearview Defendants' Motion to Delay

The Clearview Defendants assert that Plaintiff's Motion for Default Judgment should be delayed because "a money judgment [against the Defaulting Defendants] is premature and will cause prejudice to non-defaulted defendants." (Motion at 3.) Specifically, they claim that an award of monetary damages against the Defaulting Defendants has the potential to bind the Clearview Defendants to a "sum certain," and the Clearview Defendants fear that, under the

---

(holding that the bankruptcy court abused its discretion by certifying as final default judgments against defaulting defendants that were inconsistent with its previous grant of summary judgment in favor of similarly situated answering defendants); *Wilcox v. Raintree Inns of Am., Inc.*, 76 F.3d 394, 1996 WL 48857, at *3 (10th Cir. 1996) (extending *Frow* to cases where multiple defendants have closely related defenses); *Gulf Coast Fans v. Midwest Electronic Electronics Importers*, 740 F.2d 1499, 1512 (11th Cir. 1984) (holding that a distributor's breach of contract claim against importer and exporter of fans could not logically result in one defendant being liable but not the other); *United States ex rel. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (holding that "where the liability is joint and several or closely interrelated and a defending party establishes that plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of a defaulting defendant").

theory of joint and several liability, they will be automatically responsible for any damages assessed against the Defaulting Defendants, in the event that Plaintiff prevails at a hearing on the Motion for Default Judgment. (*Id.*) Although Plaintiff has brought separate claims against the Defaulting Defendants and the Clearview Defendants, the Clearview Defendants nonetheless contend that they could be held responsible for the entirety of the $93,592.15 loan since this amount is, in Plaintiff's words, "inclusive of the damages to be proven" against the Defaulting Defendants. (Opposition at 5.) The Clearview Defendants contend that "discovery is required to ascertain what, if any, damages Plaintiff might be entitled to receive in the event of [a verdict against the Clearview Defendants]." (Motion at 3.)

Accordingly, the Clearview Defendants request that the Court delay assessment of damages with regard to the Defaulting Defendants until after discovery. At the July 7, 2015 hearing, the Clearview Defendants reiterated that they would not be prejudiced if this Court entered a Default Judgment against the Defaulting Defendants but stayed an assignment of damages. However, the Clearview Defendants could not articulate any reason why joint and several liability would apply between the Clearview Defendants and the Defaulting Defendants. After initially claiming that it was their understanding that joint and several liability applies in this case, the Clearview Defendants clarified that they do not believe that they should be held jointly and severally liable but that they filed their Motion to obtain assurance that they would not be bound by a damages award against the Defaulting Defendants.[15]

Plaintiff clarified at the hearing that it does not seek to hold the two sets of defendants

---

[15]  The Clearview Defendants stated at the hearing that a line in the Memorandum Opinion noting that they would not be bound to any damages calculation assessed against the Defaulting Defendants would be sufficient to assuage their concerns.

jointly and severally liable and that it views the claims against the defaulting and answering

defendants to be separate and distinct.[16]  Plaintiff correctly noted that since the first four counts

of the Amended Complaint were not asserted against the Clearview Defendants, Plaintiff could

have brought two separate lawsuits, one against the Defaulting Defendants and one against the

Clearview Defendants. Plaintiff further noted that it will have to prove liability and damages

against the Clearview Defendants, and that it concurs with the Clearview Defendants that

proceeding to discovery on damages is necessary on Counts Five and Six.

The Court agrees with Plaintiff that liability is not joint and several between the

Defaulting Defendants and the Clearview Defendants. The claims against the Clearview

Defendants and the Defaulting Defendants are separate, despite being pled in the same Amended

Complaint. The Clearview Defendants were not parties to, or intended third party beneficiaries

of, the Joint Venture Agreement or promissory note, nor were they involved in the "marketing

and rehabilitation of the Property at issue on which liability is alleged against [the Defaulting

Defendants]." (Opposition at 4.) Against the Clearview Defendants, Plaintiff asserts only

Negligence – Breach of Fiduciary Duty and Breach of Contract claims, arising out of their

alleged failure to obtain and record a properly executed Deed of Trust and thereby secure

Plaintiff's interest in the Property. (Am. Compl. ¶¶ 23-25.) As a result, the information

uncovered during discovery between Plaintiff and the Clearview Defendants has no bearing on

the damages claimed against the Defaulting Defendants, and the damages claimed against the

Defaulting Defendants are not in any way binding on the Clearview Defendants.

*Frow* bars entry of a default judgment against one of several defendants when the default

---

[16]  This is consistent with Plaintiff's position in its Opposition that the Clearview Defendants "will have the opportunity to conduct discovery and defend the case accordingly." (Opposition at 5.)

judgment would potentially result in an inconsistent finding on the issue of liability; however, there is no danger of that occurring in the instant case. The Clearview Defendants' contention that they will be bound to an award of damages against the Defaulting Defendants is inconsistent with this Circuit's understanding of *Frow*. *See Whelan v. Abell,* 953 F.2d at 674 ("in cases involving multiple defendants, a default order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint . . . and when the relief sought can only be effective if judgment is granted against all.") Because liability in this case is not truly joint, and because there is therefore no risk that a damages award against the Defaulting Defendants would bind the Clearview Defendants, the Court finds that there is no just reason to delay a hearing on Plaintiff's Motion for Default Judgment.[17]  *See* Fed. R. Civ. P. 54(b) (when multiple defendants are involved, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.")

## IV. Conclusion

For the foregoing reasons, this Court denies Defendants' Motion to Delay Entry of Default Judgment Damages [29]. An order consistent with this Memorandum Opinion will be issued separately.

DATE:  July 17, 2015                                 /s/
                                                     ALAN KAY
                                                     UNITED STATES MAGISTRATE JUDGE

---

[17]  Plaintiff will still be required to prove at a hearing on the Motion for Default Judgment that a default judgment is appropriate, as well as the amount of damages, if any, that this Court should assess against the Defaulting Defendants.